UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

HENRY E. WATTERS,
    Plaintiff,

vs.                                                      09-1115

JOSEPH MATHY, et. al.,
    Defendants.

## CASE MANAGEMENT AND MERIT REVIEW ORDER

    This cause is before the court for merit review of the plaintiff's amended complaint. The court ordered the plaintiff to file an amended complaint after reviewing the initial complaint filed in this case. The plaintiff's complaint named 17 defendants, but did not adequately put the defendants on notice of the claims against them. For instance, some allegations did not state what defendants were responsible, some did not include a general time frame and some did not include basic information. *See* May 4, 2009 Court Order. In addition, the plaintiff was advised that he must not file unrelated claims against unrelated defendants in the same lawsuit. The court provided the plaintiff with some general guidance and ordered the plaintiff to file a amended complaint within 21 days of the order. The plaintiff has complied and his motion to file an amended complaint is granted. [d/e 11]

    The court is required by 28 U.S.C. §1915A to "screen" the plaintiff's amended complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

    The plaintiff's amended complaint is filed pursuant to 42 U.S.C. §1983 claiming that his constitutional rights were violated at the Pontiac Correctional Center. The plaintiff has named seven defendants including Lieutenant Larry Deathridge; Correctional Officers Jason Allen, Richard Allen, Eyler, Gregory Tangaman, K. Robinson, Trainor and Olson. The plaintiff is suing the defendants in their individual capacity.

    The court notes that the plaintiff is no longer suing Defendants Mathy, Quinley, Prentice, Baum, Kochel, Vella, McCormick, Turner and Forbus named among the 17 defendants in the original complaint. Since the amended complaint supercedes the original complaint, the clerk of the court will be directed to dismiss these defendants and add the one new defendant, Correctional Officer Eyler.

    The plaintiff alleges the defendants violated the plaintiffs Eighth Amendment rights

when they repeatedly used excessive force against him. The plaintiff states that on September 16, 2008, he was taken to a holding cell in the health care unit to wait for a doctor's appointment. However Defendants J. Allen, Eyler, Olson and R. Allen took the plaintiff from the cell and took him to a secluded area where Defendant J. Allen punched the plaintiff in the head causing injuries. Defendant R. Allen then pulled the plaintiff's arms up while pushing his elbow into the plaintiff's spine causing injuries.

The plaintiff says he was taken back to his cell without receiving any medical treatment, so he flooded his cell to get attention. The plaintiff says Defendant Trainor then came to his cell and ordered the plaintiff to cuff up. The plaintiff says he was left handcuffed in his cell for thirty minutes and "[t]his was done to inflict pain and suffering." (Comp, p. 4).

The plaintiff says Defendants J. Allen, Olson, R. Allen, Robinson and Tangaman then inflicted additional pain when they dragged the plaintiff down a staircase injuring his wrist and fingers. The plaintiff says the defendants also threw him down on a concrete floor causing him to hit his head. The plaintiff says Defendant Deathridge saw the conduct of the defendants, but took no action.

The plaintiff says Defendants Tangaman and Robinson returned the plaintiff to his cell and bent the plaintiff's fingers and wrist back "causing the plaintiff pain and suffering..." (Comp., p. 5).

The plaintiff has also attached a few exhibits to his complaint. The first is an Adjustment Committee Report showing the plaintiff was charged with assaulting a staff member; damage or misuse of property; health, smoking or safety violations and disobeying a direct order on this same day: September 16, 2008. The report states that officers gave the plaintiff a direct order to stop being disruptive in the holding cell in the health care unit. When he refused, he was taken back to his cell and he then flooded his cell. As he was being escorted out of his cell, the officers say the plaintiff became aggressive and pinned one officer's hand against the door frame and attempted to bite another.

The plaintiff admitted to the committee that he flooded his cell, but denied all other allegations. The committee found the plaintiff guilty of all claims and revoked one year of good time credits as a result.

The plaintiff has also attached a copy of a grievance he filed on December 4, 2008. The six page grievance outlines all of the claims in the plaintiff's complaint. On December 11, 2008, the Grievance Counselor responded that a copy of the grievance would be sent to Internal Affairs for investigation into the plaintiff's claims that he was injured by staff.

On January 14, 2009, the Grievance Officer denied the plaintiff's grievance. The grievance officer said the plaintiff's grievance was well beyond the time frame allowed to file a

grievance. Nonetheless, the grievance officer investigated the claims and noted that the plaintiff was the aggressor and was disciplined as a result. In addition, the plaintiff was "looked at by CMT Cation and required no medical attention." (Comp, Grievance response). The Warden agreed with the denial of the plaintiff's grievance on January 19, 2009.

At the bottom of the grievance form, it clearly states that any appeal to the Administrative Review Board "must be submitted 30 days after the date of the Chief Administrative Officer's decision..." (Comp, Grievance response). Nonetheless, the plaintiff signed the document requesting an appeal on March 23, 2009, more than one month after that deadline. Consequently, the Administrative Review Board responded to the plaintiff's appeal by simply stating that it was not submitted within the proper time frame.

There are several problems with the plaintiff's complaint. First, some of the plaintiff's claims of excessive force involve the exact same facts which lead to his disciplinary sanctions. These claims are therefore barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). "When a state prisoner seeks damages in a §1983 suit, the district court must consider whether a judgement in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487. This holding has been extended to judgement in prison disciplinary proceedings. *Edwards v. Balisok*, 520 U.S. 641 (1997).

The plaintiff claims he was not the aggressor. However, the plaintiff lost good time credits as a result of the incident and has not demonstrated that this decision has been overturned.

In addition, the plaintiff's complaint and attachments demonstrate that he has failed to exhaust his administrative remedies as required. The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. §1997e(a).

The purpose of the exhaustion requirement is to allow prison officials the time and opportunity to respond to complaints internally before an inmate starts litigation. *Smith v Zachary,* 255 F.3d 446, 450-51 (7th Cir. 2001). The Seventh Circuit has taken a strict compliance approach to exhaustion requiring a prisoner to pursue all available administrative remedies and comply with the prison's procedural rules and deadlines. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir.2002).

Failure to exhaust is ground for summary dismissal of the complaint. *See Porter v. Nussle,* 534 U.S. 516, 524 (2002); *Lewis v. Washington,* 300 F.3d 829, 834 (7th Cir. 2002);

*Ester v Principi,* 250 F.3d 1068, 1071 (7th Cir. 2001). Failure to exhaust is an affirmative defense. *See Jones v Bock,* 549 U.S. 199 (2007). However, "when the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous, the district judge need not wait for an answer before dismissing the suit." *Walker v Thompson,* 288 F.3d 1005, 1009 (7th Cir. 2002).

In the case before the court, it is clear from the complaint submitted to the court that the plaintiff did not follow the prison's procedural rules for filing a timely grievance. Nonetheless, prison officials still considered his claims and denied his grievance. The plaintiff then again failed to follow procedural rules for a timely appeal and his claims were not considered by the Administrative Review Board. The plaintiff therefore failed to fully exhaust his administrative remedies before filing his lawsuit as required and the court must dismiss his case.

**IT IS THEREFORE ORDERED:**

1) **The plaintiff's motion to file an amended complaint is granted. [d/e 11] The clerk of the court is directed to file the plaintiff's amended complaint and add Defendant "Correctional Officer Eyler." The clerk of the court is also directed to dismiss Defendants Mathy, Quinley, Prentice, Baum, Kochel, Vella, McCormick, Turner and Forbus since they are not named as defendants in the amended complaint.**

2) **The plaintiff's amended complaint is dismissed for failure to exhaust administrative remedies as required pursuant to 42 U.S.C. §1997e(a). This case is closed, with the parties to bear their own costs;**

3) **The plaintiff must still pay the full docketing fee of $350.00 even though his case has been dismissed. The agency having custody of the plaintiff is directed to remit the docketing fee of $350.00 from the plaintiff's prison trust fund account if such funds are available. If the plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety. The filing fee collected shall not exceed the statutory filing fee of $350.00.**

4) **The plaintiff is ordered to notify the clerk of the court of a change of address and phone number within seven days of such change.**

5)     **The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.**

6)     **If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)c. If the plaintiff does choose to appeal, he will be liable for the $455 appellate filing fee irrespective of the outcome of the appeal.**

Entered this 24th day of June, 2009.

s\Harold A. Baker

_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE